UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CECIL BELL,

                       Plaintiff,

     -against-                                        04 Civ. 6520 (RJH)

                                                                   **MEMORANDUM OPINION**
CONSTRUCTION AND GENERAL BUILDING            **AND ORDER**
LABORERS' LOCAL 79, and FRANK
NOVIELLO,

                       Defendants.

---

Richard J. Holwell, District Judge:

       Plaintiff Cecil Bell brought this action in New York State Supreme Court on July 2, 2004, alleging that defendants Construction and General Building Laborers' Local 79 ("Local 79") and Frank Noviello, Local 79's president at the time, retaliated against him for filing charges of racial discrimination with the National Labor Relations Board and the Equal Employment Opportunity Commission against Local 79. Defendants removed the action to this Court on August 12, 2004. After a three-day jury trial, the jury found in favor of defendants. Plaintiff Cecil Bell now moves for a new trial based on the Court's exclusion of the recording and transcript of a taped conversation between Bell and non-party Jack Klein (the "Klein-Bell Recording"). For the following reasons, that motion is DENIED.

       It is well established that "[i]n order for the Court 'to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . [that] the verdict is a miscarriage of justice, *i.e.*, it must view the jury's verdict as against the weight of the evidence.'"

1

*Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 558 (S.D.N.Y. 2010) (quoting *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003)). "Thus, a court should grant a new trial if it finds that the verdict is 'against the weight of the evidence,' or 'if the trial was not fair to the moving party.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 573 (S.D.N.Y. 2011) (quoting *Manley*, 337 F.3d at 245; *United States v. Greer*, 285 F.3d 158, 170 (2d Cir. 2002)). "A trial may be unfair to the moving party if substantial errors were made in admitting or excluding evidence, or in charging the jury, or if misconduct by counsel during the course of the trial causes unfair prejudice to the moving part." *Id.* "The Rule 59 standard is less stringent than the Rule 50 standard for judgment as a matter of law in two respects: '(1) a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Id*. (quoting *Manley*, 337 F.3d at 244-45). "In weighing the evidence, however, the Court should not ordinarily ignore the jury's role in resolving factual disputes and assessing witness credibility." *Mugavero*, 680 F. Supp. 2d at 558-59 (internal quotation marks omitted).

By way of background, a central issue at trial was whether defendants Noviello or Local 79 retaliated against Bell in 2004 by convincing Jack Klein, a Vice President of Silverstein Development Corporation ("Silverstein"), to drop efforts that he was making to get Bell hired as a laborer on the World Trade Center 7 ("WTC 7") reconstruction project because of complaints of racial discrimination Bell filed against Local 79 in 2003. Bell was attempting to secure employment with Tishman Construction ("Tishman"), the general contractor at the WTC 7 site. Silverstein was the developer who had retained Tishman at the WTC 7 site. Frank Noviello was the president of Local 79, Bell's union, and spoke with Klein about Bell in 2004.

The relevant portion of the disputed recording contains this quote from Klein:

> [Klein]: I went to *your* president, the president of *your* union and asked him to put you on your job, on, on my job. And he says, "Look Jack, I'm not a real big fan of this guy; he's got issues." I don't know what that means, right? He said, "but he's got issues with the union." And I don't know what that means, but I went to the president of your union and I'm tellin' ya, under normal circumstances Frankie [Noviello] would have done whatever I asked him to do.

(Pl.'s Exs. 5, 6 (emphasis in original).)

At trial, counsel for Local 79 and Klein had this exchange:

> Q: . . . Did Mr. Noviello at any time say anything to you or do anything that made you or caused you to stop making an effort to get Mr. Bell a job?
> A: No.

(Trial Tr. at 102:21-24.)

Counsel for Bell, on cross-examination, asked Klein about the recorded conversation, although the recording itself was not mentioned:

> Q: My question to you, sir, is did you tell Mr. Bell during a conversation that you had with him that you went to the president of Mr. Bell's union and asked the president of Mr. Bell's union to put him on a job and Mr. Noviello told you, look, Jack, I'm not a real big fan of this guy. He's got issues. Did you tell that to Mr. Bell?
>
> A: I did tell that to Mr. Bell.
>
> Q: Did you also tell Mr. Bell during that conversation that you didn't know what that meant about issues?
>
> A: Yes, I did.
>
> Q: And did you tell Mr. Bell that you went to the president of his union and that under normal circumstances, Frankie Noviello would have done what you asked for?
> . . .
> A: Yes, I did.
>
> Q: And did you tell Mr. Bell that you went to the president of your union, that was as high as you could go. Is that correct, did you tell Mr. Bell that?
>
> A: I believe I did.

3

> . . .
> Q: . . . When you approached Mr. Noviello, were you approaching Mr. Noviello with an attempt to get Mr. Bell a job in good faith?
>
> A: Yes.

(Trial Tr. at 105:16-107:21.)  Prior to this exchange, Bell's counsel made "a formal offer of proof to have the jury read the transcript and hear the tape recording of the conversation" between Bell and Klein.[1]  (*See id.* at 103:23-104:1.)  The Court denied that and ruled that the transcript was an out of court statement and hearsay.  (*Id.* at 104:8-16.)

At the end of trial, the jury found for defendants, and judgment for the defendants was entered on February 7, 2011.

Bell makes three arguments that the recording and transcript were improperly excluded: (1) they fit the state-of-mind hearsay exception, Fed. R. Evid. 803(3); (2) defendants "opened the door to the admissibility of the Klein-Bell Recording" because they argued that nothing Noviello said to Klein had any impact on what Klein did for Bell; and (3) the recording and transcript fit the residual hearsay exception, Fed. R. Evid. 807.  (Pl.'s Mem. at 6-9.)  These arguments are unavailing.

Federal Rule of Evidence 803(3) excepts from the general rule excluding hearsay "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition" but the exception does "not includ[e] a statement of memory or belief to prove the fact remembered or believed."  Fed. R. Evid. 803(3).   Thus, "the state of mind exception of Rule 803(3) . . . requires that the statement be contemporaneous to the event sought to be proved."  *In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (DLC), 2005 WL 375315, at *9 n.9 (S.D.N.Y. Feb. 17, 2005) (citing *United States v. Cardascia*, 951 F.2d 474, 488 (2d Cir. 1991)).  To be

---

[1] The transcript actually refers to a tape recording of a conversation between Bell and Noviello, but no such recording exists; the Klein-Bell recording is the one that was at issue throughout the trial.

4

admitted under this rule, "the statement must face forward, rather than backward." *United States v. Harwood*, 998 F.2d 91, 98 (2d Cir. 1993). The reasons for the exception "focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation." *Id.* Here, however, Klein's recorded statement is a statement of his memory of a meeting with Noviello, and the statement is introduced to prove that memory. The statement therefore fails to meet the requirement of contemporaneity. Although Bell argues in reply that "[t]he question before the Court is not *when* Noviello made the statement to Klein but *whether* Klein was speaking about his then-existing state of mind when he was explaining to Bell the reason why he terminated his efforts on Bell's behalf," (Pl.'s Mem. at 3 (emphasis in original)), this misunderstands the exception. "The exclusion of 'statements of memory or belief to prove the fact remembered or believed' is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind." Fed. R. Evid. 803(3) advisory committee's note. Admitting the recording and transcript under Rule 803(3) would accomplish the "virtual destruction" of which the advisory committee warned. This argument therefore fails.

Bell's contention that defendants "opened the door" to admission of the recording and transcript is also meritless. "The concept of 'opening the door,' or 'curative admissibility,' gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence." *United States v. Rea*, 958 F.2d 1206, 1225 (2d Cir. 1992). "To be admissible under the doctrine of curative admissibility, the evidence that allegedly opened the door must in

fact have been inadmissible.  Properly admitted evidence does not open the door to inadmissible evidence." *Id.*  Bell contends that statements made during opening and closing arguments, as well as a defendant's question asking Klein whether Noviello said or did anything to cause Klein to stop making an effort to get Bell a job, opened the door.  Of course, statements made during arguments are not evidence at all, let alone inadmissible evidence.  Neither did the question directed at Klein elicit inadmissible evidence, and Bell does not argue that it did.

Although Bell styles his argument as one based on defendants' "opening the door," he also cites *United States v. Apuzzo*, 245 F.2d 416 (2d Cir. 1957), in both his moving and reply memoranda.  There, the Second Circuit, discussing the doctrine of "verbal completeness," noted that "[w]here the testimony necessary to complete the story is hearsay or other excludable matter the trial judge has discretion in deciding whether or not to permit completion."  245 F.2d at 422.  But that doctrine "ordinarily is used to permit the witness to complete verbal statements that are presented in an incomplete manner by the opponent."  *United States v. Pintar*, 630 F.2d 1270, 1284 (8th Cir. 1980).  Here, however, the one question to which Bell points as necessitating the invocation of "verbal completeness" elicited only an answer of "no" from Klein.  There was no incomplete verbal statement, and this argument also fails.

Bell also argues that the recording and transcript should have been admitted under Fed. R. Evid. 807.  "A statement will be admitted under this rule if '(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party.'"  *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004) (quoting *United States v. Bryce*, 208 F.3d 346, 350-51 (2d Cir. 1999)).  Plaintiff does not cite any case law, but argues that the tape recording is "far more probative than

6

the statements Klein or others might offer at trial five years after the events." (Pl.'s Mem. at 7.) However, "Congress intended that the residual hearsay exceptions will be used very rarely, and only in exceptional circumstances," *Park West Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 331-32 (S.D.N.Y. 2009), and case law indicates that where a witness is available to testify, live testimony is preferred. *See Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907-08 (2d Cir. 1991) (preferring live testimony to written memorialization of a conversation and restricting the use of the written record to refreshing recollection). The transcript and recording therefore also do not fit the "catch-all" hearsay exception, and are therefore inadmissible.

Finally, even if excluding the transcript and recording was erroneous, Bell offers only conclusory argument as to why admitting them would have changed the verdict. (*See* Pl.'s Reply at 6.) In light of the considerable evidence presented against Bell's claim and Klein's live testimony at trial regarding the conversation in question, which covered nearly everything relevant to Bell's claim that was in the recording, the Court does not conclude that the jury reached a seriously erroneous result, that the jury's verdict was against the weight of the evidence, or that the trial was unfair to Bell.

## CONCLUSION

For the foregoing reasons, Bell's motion for a new trial **[64]** is DENIED.

SO ORDERED.

Dated: New York, New York
       August 24, 2011

_____
Richard J. Holwell
United States District Judge